UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, a STATE corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>BUHLER BARTH GMBH, a Foreign Corporation, and DOES 1 through 50,<br><br>    Defendants. | No.  1:15-cv-00582-JAM-EPG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURIDSDICTION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

    Defendant Buhler Barth GMBH ("Buhler") seeks an order to compel arbitration with Plaintiff Nationwide Agribusiness Insurance Company ("Nationwide") or, in the alternative, to dismiss Nationwide's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) or, in the alternative, to dismiss Nationwide's strict liability claim pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. #19).  Nationwide opposes the motion (Doc. #22).

    As discussed below, the Court finds that it has specific

1

personal jurisdiction over Buhler. The Court further finds that Nationwide, as the subrogated insurer of Hilltop Ranch, Inc. ("Hilltop"), is required to abide by the valid and enforceable arbitration agreement entered into by Hilltop and Buhler. Because this finding dispositive, the Court does not reach Buhler's motion to dismiss Nationwide's strict liability claim.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Nationwide is an insurance company organized under the laws of California. First Amended Complaint ("FAC"), Buhler's Notice of Removal, Attachment A (Doc. #1) at 6. Hilltop is a privately owned processor of almonds based in California. McDonald Aug. 3, 2015 Decl. ¶3; McDonald Sept. 30, 2015 Decl. ¶5. Buhler is a German corporation centered in Freiberg am Neckar, Germany. Gustavsson Decl. ¶3-4.

On October 6, 2010, Buhler sold to Hilltop a Pasteurization System CCP10000 machine ("CCP10000"). Mot. at 2. The sale took place after telephonic and written negotiations between Hilltop and Buhler. Mot. at 3. The sale was finalized by an Order Confirmation, which included a section on General Conditions for Sale and Delivery ("General Conditions"). Gustavsson Decl. Exh. A, at 6-28. Section 72 of the General Conditions included the following arbitration clause: "[a]ll disputes arising out of or in connection with the Contract shall be finally settled under the Rules of Arbitration of the International Chamber of

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 7, 2015.

1  Commerce." Id. at 27.
2      Nationwide alleges that in the fall of 2013 the accumulation
3  of almond dust in the valves of the CCP10000 caused the
4  contamination of a batch of almonds that were to be processed and
5  sold by Hilltop. Opp. at 2. Hilltop submitted a claim for their
6  alleged losses under their insurance policy with Nationwide. Id.
7  On or about March 3, 2014, Nationwide paid $150,000.00 to Hilltop
8  in accordance with Hilltop's insurance policy. Id.; FAC at 6.
9      Nationwide filed a complaint on February 23, 2015 in the
10 California Superior Court for the County of Merced against
11 Buhler, Inc. d/b/a Buhler Group ("Buhler, Inc."). It then filed
12 an amended complaint on March 3, 2015, adding Buhler Barth GMBH
13 as a defendant. The complaint stated that Nationwide was
14 "subrogated to the rights and entitled to enforce the remedies of
15 Hilltop." FAC at 6. Buhler, Inc. removed the case to federal
16 court on April 15, 2015 (Doc. #1). On May 28, 2015, Plaintiff
17 voluntary dismissed Buhler, Inc. pursuant to FRCP 41(a)(1)(A)(i)
18 (Doc. #14). As such, the case is proceeding only against Buhler
19 Barth GMBH.
20     Nationwide brings two causes of action against Buhler.
21 First, Nationwide alleges that Buhler was generally negligent
22 because Buhler "negligently . . . reviewed, assessed, examined,
23 manufactured, installed, designed and/or operated their business
24 . . . so as to cause . . . the almonds to become contaminated."
25 FAC at 4. In support of this general negligence claim,
26 Nationwide further alleges that Buhler negligently "hired,
27 controlled, [and] supervised . . . work so as to cause . . .
28 contamination of produce." Id. Secondly, Nationwide alleges

3

four claims of products liability, including strict liability, negligence, and breaches of implied and express warranties. Id. at 5. Nationwide is seeking the reimbursement of the $150,000.00 it paid to Hilltop for damages related to the alleged contamination of Hilltop's almond supply, as well as legal costs and prejudgement interest. Id. at 6.

On August 3, 2015, Buhler filed this motion to compel arbitration under the Federal Arbitration Act ("FAA") or, in the alternative to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss the strict liability claim for failure to state a claim upon which relief may be granted (Doc. #19). Nationwide opposes the motion (Doc. #22).

## II.   OPINION

### A.   Jurisdiction

For the Court to rule on the motion to compel arbitration, it must first find that it has personal jurisdiction over Buhler. Buhler makes no objection to the Court exercising personal jurisdiction over it with respect to the motion to compel arbitration. Under normal circumstances, this would lead the Court to conclude that Buhler has waived any objections to personal jurisdiction. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) ("the requirement of personal jurisdiction . . . can . . . be waived"). A party can waive the requirement of personal jurisdiction explicitly or implicitly, including by simply appearing in court. Id.

However, Buhler alternatively and secondarily moves for dismissal under FRCP 12(b)(2) for lack of personal jurisdiction.

4

This raises an issue as to whether a defendant may temporarily waive its objections to the exercise of personal jurisdiction to allow the court to rule on a motion to compel arbitration, thereby preserving its ability to bring an alternative and secondary motion to dismiss for lack of personal jurisdiction.

The Court concludes that it must decide the jurisdictional issue before ruling on Buhler's motion to compel arbitration. Though a party is allowed to submit alternative and inconsistent claims under FRCP 8(d)(2) and FRCP 8(d)(3), a motion asserting that the Court lacks personal jurisdiction must be made in the first responsive pleading. Fed R. Civ. P. 12(h). As such, it would be improper for the Court to rule on the motion to compel arbitration by assuming that Buhler has temporarily waived personal jurisdiction objections, only to subsequently rule on Buhler's motion to dismiss for lack of personal jurisdiction.[2]

A federal district court has personal jurisdiction over a nonresident defendant in a diversity of citizenship case where (1) a state statute of the forum confers personal jurisdiction over the nonresident defendant and (2) the exercise of jurisdiction accords with federal constitutional principles of due process. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392

---

[2] The Court notes that at least one court has ruled on a motion to compel arbitration before ruling on a motion to dismiss for lack of personal jurisdiction. See, e.g., Roach v. Tate Publ'g & Enterprises, No. 1:15-cv-00917-SAB, 2015 WL 5092690 (E.D. Cal. Aug. 28, 2015). The court in Roach granted the motion to compel arbitration and denied the motion to dismiss based on personal jurisdiction. It would have been problematic for the court to compel arbitration only to subsequently rule that it did not have jurisdiction over the defendant. To avoid such a problem, the Court believes it is best to decide the jurisdictional issue first.

(9th Cir. 1984). With regard to the first requirement, section 410.10 of the California Code of Civil Procedure permits the exercise of jurisdiction to the extent authorized by the Constitution of the United States. Id. With regard to the second constitutional requirement, the "basic federal rule is that the defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. The Ninth Circuit has adopted the following approach in determining whether specific personal jurisdiction exists over a defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

Id. at 1393.

Accordingly, Nationwide must demonstrate that Buhler purposely availed itself of the privilege of conducting activities in California and that this matter arises out of that California-related activity. Nationwide, as the party seeking to invoke federal jurisdiction, has the burden of establishing that personal jurisdiction over Buhler exists. Id. at 1392. Nationwide "must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." Data Disc, Inc. v. Sys. Tech. Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In ruling on a motion to dismiss for lack of personal jurisdiction,

6

"a court may consider declarations[,] discovery materials[, and] . . . uncontroverted allegations in the complaint." <u>ADO Fin., AG v. McDonnell Douglas Corp.</u>, 931 F. Supp. 711, 714 (C.D. Cal. 1996).

Nationwide has alleged sufficient facts to make a prima facie showing of specific personal jurisdiction. All that is required to meet the purposeful availment test is "some type of affirmative conduct which allows or *promotes* the transaction of business within the forum state." <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d 1191, 1195 (9th Cir. 1988)(emphasis added). "Physical contact with the forum state is not a necessary condition." <u>Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1130 (9th Cir. 2003). Buhler admits that it negotiated with Hilltop in writing and by telephone before finalizing the sale of the CCP10000. Gustavsson Decl. ¶15. Negotiating with Hilltop, a California company, over the sale of the CCP10000 certainly is affirmative conduct that promoted Buhler's business in California.

Additionally, there can be no doubt that Nationwide's claims arise out of or result from Buhler's forum-specific activities. Buhler's forum-specific activities include negotiating the deal with Hilltop, making the sale to Hilltop, and assisting Hilltop with the commissioning of the machine. Nationwide's negligence and product liability claims certainly arise out of Buhler's marketing and sale of the CCP10000 to Hilltop.

Finally, the exercise of jurisdiction over Buhler is reasonable. Buhler dispatched representatives to assist Hilltop with the CCP10000 after Hilltop encountered problems

7

commissioning the machine. Rutan Decl. ¶6. At least one of these representatives presented a business card to Hilltop indicating that he was located in Santa Rosa, California. Id. Buhler concedes that several times a year, "an employee of Buhler Barth may travel to California to assist with installation [and] service maintenance" of its machines, and that Buhler's sales managers "occasionally travel to California for business purposes." Gustavsson Decl. ¶11. This repeated interaction with the forum of California ensures that the exercise of personal jurisdiction in this case is reasonable and will not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).

Thus, the Court finds that it may exercise specific personal jurisdiction over Buhler with respect to the claims brought by Nationwide. Since the Court has personal jurisdiction over Buhler, it now turns to Buhler's motion to compel arbitration.

B.   Arbitration

The FAA permits a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" in accordance with a written arbitration agreement to petition a district court for an order directing the parties to proceed to arbitration. 9 U.S.C. § 4. When deciding such a petition, the court's sole role is "determining [1] whether a valid arbitration agreement exists and, if so, [2] whether the agreement encompasses the dispute at issue." Lifescan, Inc. v. Premier Diabetic Sevs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA created a "strong federal policy favoring arbitral dispute resolution," Simula, Inc. v.

Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999), and courts have been directed to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). As such, the Supreme Court has held that a party seeking to avoid arbitration under the FAA bears the burden of proving that the claims are unsuitable for arbitration. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91-92 (2000); Daugherty v. Experian Info. Solutions, Inc., 847 F. Supp. 2d 1189, 1194 (N.D. Cal. 2012) ("The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.").

### 1. Validity of the Arbitration Agreement

The first step of the Lifescan analysis is to determine whether the arbitration agreement is valid. Nationwide makes two arguments against the validity and enforceability of the arbitration agreement. First, Nationwide argues that the agreement is inapplicable to Nationwide because it was Hilltop not Nationwide that signed the agreement. Opp. at 2-3. Second, Nationwide argues that the agreement is unconscionable and therefore unenforceable. Id. at 3-4.

Arbitration agreements are to be placed on an "equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). As such, written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As discussed further below, Nationwide has no valid legal or equitable arguments for the

revocation of the arbitration agreement.

                    a.    <u>Parties to the Agreement</u>

Nationwide claims that the FAA only mandates arbitration for parties who were signatories to an arbitration agreement. Opp. at 2. Because Nationwide was "not a party to and had no prior knowledge of[] any arbitration clause," Nationwide argues it has not elected to arbitrate this case and cannot be required to do so. Id. at 2-3. Nationwide contends that "it goes without saying that a contract cannot bind a nonparty." Opp. at 3 (quoting <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 294 (2002).

Nationwide's claim that all categories of nonsignatories cannot be bound by an arbitration agreement is simply untrue and ignores the fact that Nationwide is operating in this case not as an unassociated third party but as the subrogated insurer of Hilltop. FAC at 6 ("[p]ursuant to . . . the laws of the State of California, Nationwide . . . is legally, equitably and contractually subrogated to the rights and entitled to enforce the remedies of Hilltop Ranch, Inc."). The Ninth Circuit has adopted the "majority view" of circuit courts that in certain circumstances, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." <u>Letizia v. Prudential Bache Securities, Inc.</u>, 802 F.2d 1185, 1187-88 (9th Cir. 1986). Nationwide, as the subrogated insurer of Hilltop, finds itself in one of these circumstances.

Specifically, Nationwide, as Hilltop's subrogated insurer, "stand[s] in the shoes" of Hilltop. <u>Gulf Ins. Co. v. TIG Ins.</u>

Co., 86 Cal.App.4th 422, 431 (2001).  Nationwide is therefore "substitut[ed] . . . in the position of its insured in order to seek reimbursement from responsible third parties for the loss paid the insured by the insurer." Crowley Mar. Corp. v. Boston Old Colony Ins. Co., 158 Cal.App.4th 1061, 1067 (2008).  In that position, the insurer may not invoke rights that the insured would not have.  Id.  ("The right of subrogation is purely derivative.  An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured.") (quoting Fireman's Fund Ins. Co. v. Maryland Casualty Co., 65 Cal.App.4th 1279, 1292 (1998)). Thus, Nationwide may not extricate itself from Hilltop's binding arbitration agreement.  See Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co., 470 F. App'x 652, 653-54 (9th Cir. 2012) (holding that subrogated insurer is entitled to enforce arbitration agreement signed by insured against the responsible party); Lumbermens Mut. Cas. Co. v. Borden Co., 268 F. Supp. 303, 314 (S.D.N.Y. 1967) ("[T]here is no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee. To hold otherwise would seriously impair the validity of arbitration clauses since either party could escape the effect of such a clause once he has settled with his insurer.").

    Nationwide cites three cases in arguing that it cannot be bound by an agreement that it did not sign. These cases are easily distinguishable from the present matter in that none of them involved an entity that "stands in the shoes" of a party to an arbitration agreement.  See Waffle House, 534 U.S. at 297 ("[T]he EEOC does *not* stand in the employee's shoes.") (emphasis

added); Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc., 47 Cal.App.4th 237, 239 (1996) (holding that "an agreement to arbitrate between a plaintiff[] and a defendant[] does not bind a cross-complainant."); Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-79 (1989) (holding that the FAA allows parties to exclude certain claims from the scope of arbitration because "parties are generally free to structure their arbitration agreements as they see fit.").

As Buhler aptly points out in its reply, it would be contrary to controlling authority and inequitable to allow Nationwide to "use its position as a subrogee as both a sword and a shield." Reply at 1. The Court concludes that Nationwide can be bound by the arbitration agreement in light of its status as a subrogated insurer of Hilltop.

### b.  Unconscionability

Nationwide secondarily argues that the agreement is unconscionable and thus unenforceable because it "unreasonably favors [Buhler,] the more powerful party" by requiring Nationwide to arbitrate in a distant country where it does not operate. Opp. at 3-4. Buhler's response is that the arbitration clause does not contain a forum selection clause and does not require the arbitration to take place in Europe. Reply at 2-3.

Indeed, Nationwide offers no factual or legal support for its contention that the arbitration agreement requires arbitration in a location "over 5,000 miles away," Opp. at 4, and the Court can find no reason to conclude the arbitration

agreement requires as such.  Instead, the Court accords weight to the fact that Hilltop, under the very same rules that would control Nationwide's potential arbitration, has sought to conduct arbitration in San Francisco, California.  McDonald Sept. 30, 2015 Decl. ¶4.  The Court further notes that the General Conditions contain no forum selection clause and that Article 5, section 1(f) of the Rules of Arbitration of the International Chamber of Commerce permit a responding party to submit "proposals as to the place of arbitration."  At the very least, Nationwide failed to meet its burden of showing that the arbitration agreement is invalid because the forum is required to be 5,000 miles away. Green Tree Fin., 531 U.S. at 91-92; Daugherty, 847 F.Supp.2d at 1194.

    Thus, the Court rejects Nationwide's argument that enforcement of the arbitration agreement would be unconscionable.  The arbitration agreement passes the first part of the Lifescan two-part inquiry and is valid and enforceable against Nationwide.

        2.   Scope of Agreement

    Once the court concludes that the parties have entered into a valid arbitration agreement, the court must then determine whether the agreement encompasses the dispute at issue. Lifescan, 363 F.3d at 1012.  To determine this, the court first looks to the language of the agreement. Waffle House, Inc., 534 U.S. 279, 289 ("Absent some ambiguity in the agreement, [] it is the language of the contract that defines the scope of disputes subject to arbitration.").  The Ninth Circuit has concluded that the phrase "arising in connection with" reaches "every dispute

between the parties having a significant relationship to the contract." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999). Thus, when an arbitration agreement employs the phrase "in connection with," a party's factual allegations "need only 'touch matters' covered by the contract containing the arbitration clause" in order for the court to require arbitration. Id.

Here, Nationwide does not even challenge Buhler's assertion that the agreement encompasses Nationwide's general negligence and products liability claims. Presumably this is because the agreement contains broad language. Section 72 of the General Terms states that "[a]ll disputes arising out of *or in connection with* the Contract shall be finally settled under the Rules of Arbitration . . . ." Gustavsson Decl., Exh. A. at 27 (emphasis added). The use of the phrase "arising . . . in connection with" places this arbitration agreement squarely in the line of cases in which a party's factual allegations "need only touch matters covered by the contract." Simula, 175 F.3d at 721.

The Order Confirmation issued between Buhler and Hilltop is over twenty pages and includes detailed information about the construction, installation, and operation of the CCP10000. Gustavsson Decl., Exh. A. at 6-28. It also includes payment terms, delivery requirements, and loads of technical data. Id. Nationwide's accusations of general negligence and products liability certainly "touch matters" covered by the Order Confirmation.

### 3. Conclusion

The FAA directs district courts, when ruling on a motion to compel arbitration, to liberally interpret the arbitration agreement in accordance with the federal policy favoring alternative dispute resolution. This federal policy is especially important in cases such as this one that involve international commerce. Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991). The Court is sensitive to Nationwide's concerns that it might be required to arbitrate this dispute against a foreign corporation in a foreign country in which it does not operate. But as the Supreme Court stated, "[a] parochial refusal by the courts of one country to enforce an international arbitration agreement would . . . damage the fabric of international commerce and trade." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 517 (1974). The Court finds that these policy considerations can only support its legal conclusion that Nationwide, as Hilltop's subrogated insurer, is required to abide by the valid and enforceable arbitration agreement entered into on October 6, 2010 by Hilltop and Buhler.

### C. Dismissal

Having concluded that the Court has personal jurisdiction over Buhler and that Buhler's motion to compel arbitration should be granted, the Court turns its attention to Buhler's motion to dismiss Nationwide's strict liability claim. The FAA does not require a Court that has granted a motion to compel arbitration to issue a stay. Instead, a district court may dismiss the case

if all claims are barred by the arbitration clause. <u>Sparling v. Hoffman Const. Co.</u>, 864 F.2d 635, 638 (9th Cir. 1988) (finding that "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required" all claims to be submitted to arbitration.); <u>see also</u> <u>Luna v. Kemira Specialty, Inc.</u>, 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008) ("[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original).

Given that Nationwide has not requested a stay and given the Court's conclusion that the broad arbitration clause covers all of Nationwide's claims, the Court finds no reason to issue a stay in this case.  Instead, the case is dismissed and the parties are required to submit their dispute to arbitration in accordance with the General Conditions of the October 6, 2010, contract.  As such, the Court has no need to specifically decide Buhler's alternative motion to dismiss under FRCP 12(b)(6).

### III.   ORDER

For the reasons set forth above, the Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.  The Defendant's motion to compel arbitration is GRANTED.  The matter is REMANDED to arbitration.  The case is DISMISSED.

IT IS SO ORDERED.

Dated: October 29, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

16